**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DAVID NATHAN CYPHER,            )
                                )
              Plaintiff,         )
                                )
    vs                          )      Civil Action No. 23-1428
                                )      Magistrate Judge Dodge
J.V. MANUFACTURING COMPANY, INC.,  )
MELISSA VECCHI and RYAN VECCHI,  )
                                )
              Defendants.        )

**<u>MEMORANDUM OPINION</u>**

Plaintiff David Nathan Cypher brings this action under several civil rights statutes, alleging that he was subjected to disability discrimination and retaliation. He asserts that his claims arose when he was terminated from his employment with J.V. Manufacturing Company, Inc. ("JVM") on October 25, 2022 when he attempted to return from work following leave taken under the Family and Medical Leave Act for knee surgery. In addition to JVM, Plaintiff names as Defendants the company's president, Ryan Vecchi, and its vice president, Melissa Vecchi.

Pending before the Court are two motions to dismiss, one filed by JVM and the other by Ryan and Melissa Vecchi (together, "the Vecchis"). For the reasons that follow, the motion filed by JVM will be granted with respect to Counts I and II and denied with respect to Counts III and IV. The motion filed by the Vecchis will be granted with respect to Counts I, II and III and denied with respect to Count IV.

## I.   <u>Relevant Procedural History</u>

Plaintiff commenced this action in August 2023, naming JVM and Melissa Vecchi as Defendants. Federal question jurisdiction is based upon the federal civil rights claims asserted in the Complaint, 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction is asserted over the

state law claims, 28 U.S.C. § 1367(a).

In response to a motion to dismiss, Plaintiff filed an Amended Complaint (ECF No. 20). A Second Amended Complaint filed on February 8, 2024 added Ryan Vecchi as a Defendant (ECF No. 36). On February 22, 2024, the Vecchis filed a motion to dismiss and strike the Second Amended Complaint (ECF No. 43), which has been fully briefed (ECF Nos. 44, 68, 72).

Plaintiff's attempt to file a Third Amended Complaint was stricken for failure to request leave of Court. Subsequently, Plaintiff requested and was granted leave to amend, resulting in the filing of a Third Amended Complaint ("TAC") on April 3, 2024 (ECF No. 56).[1]

The TAC alleges claims of disability discrimination in violation of the Americans With Disabilities Act, 42 U.S.C. §§ 12101-12117 ("ADA") and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-63 ("PHRA") (Count I), failure to accommodate in violation of the ADA and the PHRA (Count II), retaliation and wrongful termination in violation of the ADA and the PHRA (Count III), and interference and retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601-54 ("FMLA") (Count IV).

On April 24, 2024, JVM filed a motion to dismiss the TAC (ECF No. 58), which has been fully briefed (ECF Nos. 59, 67, 71).

## II.   **Factual Background**

Plaintiff began employment with JVM on September 30, 2019 as a Toll Room Supervisor. On July 20, 2022, he underwent surgery for a torn meniscus, which required a period

---

[1] Because the same claims are asserted, the filing of the TAC did not affect the Vecchis' motion to dismiss, which was based on their liability as individuals. Like all of the preceding Complaints, the TAC contains a section called "Participation Theory" (TAC ¶¶ 64-67), in which Plaintiff alleges that the Vecchis are liable under the ADA, PHRA and FMLA for all counts. However, in response to the motion to dismiss, he has withdrawn this theory with respect to the ADA claims. The liability of the Vecchis for the other claims is discussed below.

of recovery and rehabilitation of up to six months. (TAC ¶¶ 8-9.)

Approximately one week before his surgical procedure, Plaintiff applied for and received 12 weeks of leave under the FMLA. His leave concluded on October 11, 2022. (*Id.* ¶ 10.)

The FMLA protocol required Plaintiff to furnish JVM with regular updates regarding his recovery status subsequent to each medical consultation. Following his surgical intervention, he engaged in administrative tasks remotely from his residence. JVM noted this activity within its electronic system and advised him to focus primarily on his recovery. Plaintiff was instructed not to engage in remote work activities during the period of his FMLA leave. (*Id.* ¶¶ 11-14.)[2]

Despite Plaintiff's initial expectation that he would not require the full 12-week duration for recuperation, his attending physician prescribed an additional six weeks of physical therapy during his medical consultation on September 2, 2022. On September 6, 2022, he corresponded via email with Human Resources ("HR") Manager Kristina Poole, advising her of a setback in his recovery and expressing his intent to utilize all of the 12-week FMLA leave. He also advised her of his follow-up doctor's appointment that was scheduled for October 18, 2022. (*Id.* ¶¶ 15-16.)

On October 5, 2022, Poole reminded Plaintiff of the impending expiration of his FMLA leave on October 11, 2022. Her email stated that pursuant to its policy, JVM required him to procure a "fitness-for-duty certification" from his physician as a prerequisite for his return. This policy indicates that JVM may delay restoration pending the presentation of the certification. (*Id.* ¶¶ 17-19.)[3]

---

[2] The TAC inconsistently refers to Plaintiff's leave as both "paid" and "unpaid." The FMLA does not require leave to be paid, but only requires employers to designate whether the leave is FMLA qualifying. *See* 29 C.F.R. § 825.301(a). Whether Plaintiff's leave was paid or unpaid is not material to the issues raised in the motions to dismiss.

[3] JVM's employee handbook at policy No. 8.8 Reinstatement provides, in relevant part: "As a

JVM directed his transition from FMLA leave to the utilization of accrued Paid Time Off (PTO) and short-term/long-term disability benefits.[4] Plaintiff was in the process of applying for STD to cover the period of several days between expiration of his FMLA leave and his reinstatement following his doctor's appointment.[5] He submitted documentation confirming the conclusion of his FMLA leave, as well as records pertinent to short-term and long-term disability. (*Id.* ¶¶ 20-23.) Plaintiff perceived the granted leave as a resolution, anticipating a return to full duties. He received no explicit warnings or threats of termination stemming from the brief period of permissive leave. He was led to believe, based on the responses received from HR, that recurrent updates were unnecessary, which fostered a sense of security that was ultimately unfounded. (*Id.* ¶¶ 24-25.)

Plaintiff was unable to attend his doctor's appointment on October 18, 2022, because he had cold/flu/COVID-19 symptoms. His doctor's office rescheduled his appointment for October 27, 2022 and he informed JVM of the rescheduled appointment. On October 19, 2022, Amber Wharry from the office of the "HR & Safety Administrator" reiterated during a phone conversation that he must secure a "fitness-for-duty certification" from his physician before being permitted to return to work. (*Id.* ¶¶ 26-30.)

Plaintiff consented to the release of his medical records to JVM. On October 23, 2022, his physician informed him of JVM's request for additional documentation pertaining to his

---

condition of returning to work from leave for employee's own serious health condition, the employee must timely present a certification from his/her health care provide that the employee is able to resume work. Restoration may be denied until the certificate is presented."

[4] Policy No. 9.2.1 Short-Term Disability ("STD") in the handbook states, in relevant part, "Once the employee's FMLA or STD (whichever lasts longer) expires, the employee may request a personal leave of absence. An employee who is no longer on an approved leave of absence may be moved to a terminated employment status, making them ineligible for any employment rights or commitments."

[5] Plaintiff claims that JVM was aware of this and attempted to contact the insurer to report what it mistakenly perceived as insurance fraud immediately before terminating him.

limitations and anticipated return-to-work date. As a result, he had every reason to believe that JVM was holding his position open and was awaiting a "fitness-for-duty" certification following his upcoming appointment. (*Id.* ¶¶ 32-35.)

Plaintiff's doctor issued a release for duty on October 27, 2022. (*Id.* ¶¶ 31, 36.) As explained below, however, by then he had been terminated.

On October 22, 2022, Plaintiff and his family were walking around a "corn maze." After the Vecchis received text messages with photographs and videos that showed him in good health, they decided to terminate him, citing his alleged "misrepresentation of his ability to return to work." According to Plaintiff, attending a corn maze with his family on October 22, a scheduled day off, was entirely proper. The videos and photos depicted him in good health, which was consistent with his communications to JVM that he was ready to resume work before October 18. The delay in his reinstatement was solely due to JVM's insistence on a "fitness-for-duty certification." Therefore, it was improper for Defendants to utilize his attendance at the corn maze as grounds for termination, particularly when he was scheduled to obtain the required certification on October 27. (*Id.* ¶¶ 41-43.)

Defendants knew that the purpose of the October 27 appointment was to secure their requirement for a fitness-for-duty certification. However, JVM reneged on its promise to delay reinstatement until he could reasonably obtain his "fitness-for-duty" certification from his doctor. It also reneged on its accommodation to grant additional ADA leave to bridge the gap between the end of 12 weeks of FMLA, and his doctor's appointment that would clear him for duty. (*Id.* ¶¶ 37-39.)

Moreover, Plaintiff alleges, a "fitness-for-duty certification" is not required but can be waived by an employer. JVM's insistence upon a second doctor's appointment and a fitness-for-

duty certification was its way to justify its improper interference with his FMLA protected right to job reinstatement. (*Id.* ¶ 40.)

Pursuant to the Defendants' own policy, an employee is allowed five "unexcused absences" before facing termination. Plaintiff notes that his first unexcused absence would have occurred on Monday, October 24. However, Plaintiff was terminated without warning or progressive discipline on Tuesday, October 25. JVM's letter regarding his termination stated: "Beginning October 19, 2022, your available FMLA, PTO and Short-term disability were exhausted. You told us that you continued to be incapacitated and unable to perform your job. As a result of your representations, the procedures and corrective actions specified in the Attendance Policy were not utilized." (*Id.* ¶¶ 46-48.)

Plaintiff asserts that contrary to JVM's implications, he was not dishonest about his ability or desire to return to work in October 2022. Rather, Plaintiff told Defendants prior to and after October 19 that he was ready, able, and willing to return to work as soon as possible.[6] He did not state that he was fully recovered, however, only that he was well enough to return to work at that time. Rather, he claims, he was disabled, but able and willing to work, with or without a reasonable accommodation, such as light duty. (*Id.* ¶¶ 49-53.) Defendants engaged in no analysis under the ADA to determine whether the allowance of a few extra days of leave beyond FMLA would have posed an unreasonable burden upon the company. (*Id.* ¶¶ 55-56.)

According to Plaintiff, either the Defendants regarded him as too disabled to resume his employment and failed to grant him additional ADA leave, or they mistakenly regarded him as fully recovered and failed to honor his right to reinstatement following FMLA leave. (*Id.* ¶ 63.)

---

[6] Plaintiff told his physicians on October 19 and 24, 2022 that he was ready to return to work and on both occasions he requested a release to go back to work. (*Id.* ¶ 54.)

### III.   <u>Standard of Review</u>

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. Ordinarily, if a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted). However, as this is the Third Amended Complaint, Plaintiff will not be permitted to amend further.

The Vecchis' motion to dismiss attaches Plaintiff's charge of discrimination filed with the Equal Employment Opportunity Commission (EEOC). In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits attached thereto, and matters of public

record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In addition, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Various courts have held that, in reviewing a motion to dismiss a discrimination claim, they can consider the administrative charge without converting the motion into a motion for summary judgment. *See Hess v. Township of Saint Thomas*, 2024 WL 1333372, at *2 n.3 (M.D. Pa. Mar. 28, 2024); *Ruddy v. U.S. Postal Serv.*, 455 F. App'x 279, 283 (3d Cir. 2011) (the district court "properly relied on Ruddy's EEOC file, which Ruddy referenced in his complaint and which is integral to his claim."); *Buck v. Hampton Twp. School Dist.*, 452 F.3d 256, 260-61 (3d Cir. 2006) (reviewing two EEOC intake questionnaires and the plaintiff's formal EEOC charge in evaluating the defendant's motion to dismiss).

Plaintiff does not challenge the authenticity of the EEOC charge and it will be considered here.

## IV. <u>Discussion</u>

### A. <u>ADA and PHRA Claims</u>

Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The PHRA similarly prohibits discrimination in employment because of any "non-job related handicap or disability." 43 P.S. § 955(a).

To state a claim under the ADA, Plaintiff "must plausibly allege three elements: that he

was disabled, was qualified for the job, and suffered discrimination because of his disability." *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021). "Disability" means: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1). In general, the same standards apply to claims under the PHRA. *See Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002).[7] "The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). *See also* 29 C.F.R. § 1630.2(j)(1)(i-iii).

    1.   Count I-Disability Discrimination Claims

In Count I, Plaintiff alleges claims of disability discrimination in violation of the ADA and the PHRA. Defendants argue that he fails to state a claim because he does not identify any disability and fails to allege but-for causation.

Defendants argue that, even by Plaintiff's own allegations, he was in good health and ready to return to work as of October 19, 2022 and thus, the decision to terminate his employment made six days later was not and could not have possibly been based on a disability. Plaintiff responds that he has alleged that his torn meniscus limited him in one or more major life activities for more than six months and he could not strain or lift heavy objects without pain or risk of further injury. However, he has not identified what "major life activities" were limited.

---

[7] It is noted that: "In 2009, Congress relaxed the ADA's standards for disability claims, but the Pennsylvania legislature has not similarly amended the PHRA." *Grochowski v. Wilkes-Barre Behav. Hosp. Co., LLC*, 2018 WL 7140234, at *4 (M.D. Pa. Aug. 31, 2018) (citation omitted), *report and recommendation adopted*, 2019 WL 361131 (M.D. Pa. Jan. 29, 2019). Nevertheless, since Plaintiff's allegations do not state a claim for disability discrimination under the relaxed standards of the ADA, by definition they would not state a claim under the more stringent standards of the PHRA. *See Knapp v. Thompson Grp., Inc.*, 2023 WL 8810785, at *7 (E.D. Pa. Dec. 19, 2023).

Moreover, he has alleged that JVM told his doctor that "he is a supervisor and does not do any heavy lifting" (TAC ¶ 54(e)). As demonstrated by the allegations of the TAC, Plaintiff was not disabled; thus, JVM could not have terminated him based on a disability on October 22, 2022.

Alternatively, the ADA states that: "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). As stated by the Court of Appeals:

> To demonstrate that an employer regarded an employee as having a qualifying disability, the plaintiff must demonstrate that the employer believed that a wholly unimpaired plaintiff had an impairment that substantially limited at least one major life activity or that the employer believed an employee's actual impairment to limit major life activities when it in fact did not.

*Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) (citation omitted). The court has applied this standard to PHRA claims as well. *Id.*

As the statute confirms, regarded as disability "shall not apply to impairments that are transitory and minor," 42 U.S.C. § 12102(3)(B). The parties debate whether this exception to regarded as disability applies here. The Court need not reach this issue, however, because a review of the allegations of the TAC confirms that Plaintiff does not claim that JVM regarded him as disabled. Rather, he alleges that JVM terminated him because it erroneously believed that he was requesting additional time off when he was fully capable of returning to work. Regardless of whether these allegations state a claim under any other statute, they do not state a claim under the ADA or the PHRA.

Plaintiff has failed to allege a claim for disability discrimination under either the ADA or

the PHRA. Therefore, with respect to Count I, the motions to dismiss filed by JVM and the Vecchis will be granted.

2.   Count II- Failure to Accommodate Claims

In Count II, Plaintiff alleges the failure to accommodate under both the ADA and PHRA. Defendants move to dismiss both claims.

Under the ADA, the term "discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). The Court of Appeals has held that, to plead a prima facie claim of failure to accommodate, a plaintiff must allege that "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (citation omitted).

Defendants argue that as his allegations confirm, Plaintiff was not disabled as of October 19, 2022, and therefore he had no need for any further accommodation as of that date. Plaintiff notes that JVM insisted that he obtain a fitness-for-duty certification, which he could not do until his doctor's appointment on October 27, 2022. Despite knowing about this appointment, JVM terminated him on October 25th. Thus, rather than engage in the interactive process, JVM required him to get a fitness-for-duty certification but terminated him before he could do so.

As explained above, the first element of an ADA disability discrimination claim—including a claim of failure to accommodate—is that the employee is disabled. As JVM notes, Plaintiff does not plead that he was, in fact, disabled. The mere fact that JVM required Plaintiff

11

to obtain a fitness-for-duty certification cannot be interpreted to conclude that he was "disabled" until he did so.[8]

Therefore, with respect to Count II, the motions to dismiss filed by JVM and the Vecchis will be granted.

### 3.   Count III- Retaliation Claims

In Count III, Plaintiff alleges retaliation claims under the ADA and PHRA. Defendants argue that these claims should be dismissed because they represent a mere repackaging of his failure to accommodate claims.

The procedures and remedies of Title VII apply to ADA retaliation claims. 42 U.S.C. §§ 12117(a), 12203(c). Discrimination against an individual who has opposed a practice prohibited by the ADA or who has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under the statute is actionable conduct. 42 U.S.C. § 12203(a). The PHRA similarly prohibits retaliation. 43 P.S. § 955(d). The Court of Appeals has held that: "Prohibited discrimination under the ADA includes retaliation against an employee for requesting an accommodation." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010) (citation omitted).

 Defendants contend, however, that a failure to accommodate claim:

> cannot be characterized as a retaliation claim under the ADA. The claim is a direct discrimination claim based on alleged failures to fulfill the affirmative duties prescribed by the ADA, *see generally U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 396, 122 S. Ct. 1516, 152 L.Ed.2d 589 (2002) ("the ADA says that 'discrimination' includes an employer's 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified . . . employee . . .' ") (quoting 42 U.S.C. § 12112(b)(5)(A); emphasis omitted); not a

---

[8] Moreover, as Defendants note, a "regarded as" claim cannot support a failure to accommodate, 42 U.S.C. § 12201(h). *See Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 188 n.30 (3d Cir. 2019).

claim based on alleged actions prohibited by the ADA, see 42 U.S.C. 12203(a) (prohibition against retaliation).

*Pagonakis v. Express LLC*, 315 F. App'x 425, 431 (3d Cir. 2009). *See also Keyhani v. Trustees of Univ. of Pennsylvania*, 812 F. App'x 88, 92 (3d Cir. 2020) ("Keyhani's argument that her employer 'retaliated' against her request for a reasonable accommodation by declining to provide her preferred accommodation is an attempt to reframe her discrimination claim.")

According to Plaintiff, not every retaliation claim is barred as a mere repackaging of a failure to accommodate claim. Indeed, in a case cited by Defendants, *Vought v. Twin Tier Hospitality, L.L.C.*, 2019 WL 2501470 (M.D. Pa. June 17, 2019) the court stated that:

> we find that Vought plausibly alleges that his request for medical leave was made in good faith. Following this request for disability accommodation, Twin Tier purportedly constructively discharged Vought and then refused to consider him for rehire. Because Vought identified adverse employment decisions beyond Twin Tier's denial of his accommodation request, Vought has sufficiently alleged an ADA retaliation claim.

*Id.* at *7 (footnote and citations omitted).

Plaintiff does not merely allege that JVM denied his request for an accommodation in the form of additional leave until he could obtain his fitness-for-duty certification, but that it also terminated his employment. Therefore, his retaliation claim is not a mere repackaging of his failure to accommodate claim. Indeed, he cannot state a claim for failure to accommodate for the reasons explained above.

Defendants also argue that Plaintiff has not plausibly alleged that he engaged in protected activity, because he did not ask to miss work after October 19, 2022 based on medical issues and in fact admits that he had no medical need to miss work as of that date.

As noted by the Third Circuit, "requesting an accommodation in good faith is a protected activity." *Kieffer v. CPR Restoration & Cleaning Servs., LLC*, 733 F. App'x 632, 638 (3d Cir.

2018) (citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003)). Relying on this statement, Defendants argue that requesting an accommodation that is "not in good faith" is not protected activity, and conclude that Plaintiff was not acting in good faith because he was not disabled. However, the *Shellenberger* case upon which the *Kieffer* case relied stated as follows: "The right to request an accommodation in good faith is no less a guarantee under the ADA than the right to file a complaint with the EEOC, and we have already explained that the ADA protects one who engages in the latter activity without regard to whether the complainant is 'disabled.'" 318 F.3d at 191. Thus, Plaintiff did not have to be disabled to state a claim for retaliation.

Because Plaintiff has stated a claim of retaliation against JVM, JVM's motion to dismiss Count III will be denied.[9]

B.  FMLA Claims

In Count IV, Plaintiff alleges both interference and retaliation claims under the FMLA. Defendants move to dismiss both claims.

The FMLA grants to an "eligible employee," among other things, the right to twelve workweeks of leave, over any period of twelve months, "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The Act provides that:

> any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave:
>
> (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or

---

[9] The Vecchis' motion, which raises the additional issue of whether Plaintiff can hold them liable under the PHRA, is discussed below.

(B) to be restored to an equivalent position with equivalent employment
benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1).

The Act contains two relatively distinct types of provisions: a series of prescriptive

substantive rights for eligible employees, often referred to as the "entitlement" or "interference"

provisions which set floors for employer conduct, 29 U.S.C. §§ 2612, 2614(a)(1); and protection

against discrimination based on the exercise of these rights, often referred to as the

"discrimination" or "retaliation" provisions, 29 U.S.C. § 2615(a)(1-2); 29 C.F.R. § 825.220(c).

*Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005). An employee may bring suit to

enforce these rights pursuant to section 2617(a) of the Act. *Conoshenti v. Public Serv. Elec. &*

*Gas Co.*, 364 F.3d 135, 141 (3d Cir. 2004).

      1.   Interference Claim

To make out a claim of interference under the FMLA, a plaintiff must establish:

(1) he or she was an eligible employee under the FMLA; (2) the defendant was an
employer subject to the FMLA's requirements; (3) the plaintiff was entitled to
FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention
to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she
was entitled under the FMLA.

*Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014) (citation omitted).

Defendants contend that Plaintiff has not stated an FMLA interference claim because he

does not allege that he requested and was denied FMLA leave. Rather, he requested and was

given FMLA leave that expired on October 11, 2022, after which he lost all of his FMLA rights,

including the right to reinstatement. *See Dogmanits v. Capital Blue Cross*, 413 F. Supp. 2d 452,

462 (E.D. Pa. 2005) ("employees who exhaust the twelve weeks of leave provided under the

FMLA stand to lose their entitlement to job restoration even if their employers provide

additional, non-FMLA, leave.") (citation omitted). *See also Conoshenti,* 364 F.3d at 148 ("there

15

is no question that Conoshenti exceeded his twelve weeks of protected leave and, under the [last chance agreement], he was subject to immediate discharge on the very first workday that he was both absent from work and no longer protected by the FMLA.")

Plaintiff argues that JVM allowed him to extend his leave and once he submitted the required fitness-for-duty certification, JVM had a duty to reinstate him. Further, he contends, JVM could delay his return until he obtained a fitness-for-duty certificate or waive the requirement, but it could not terminate his employment. JVM counters that no delay occurred prior to the expiration of his FMLA leave and that it was Plaintiff who indicated he had a setback and would need to be out beyond the October 11, 2022 end of his FMLA leave.

The FMLA provides that:

> When requested by the employer pursuant to a uniformly applied policy for similarly-situated employees, the employee must provide medical certification, at the time the employee seeks reinstatement at the end of FMLA leave taken for the employee's serious health condition, that the employee is fit for duty and able to return to work (see § 825.312(a)) if the employer has provided the required notice (see § 825.300(e)); the employer may delay restoration until the certification is provided. Unless the employee provides either a fitness-for-duty certification or a new medical certification for a serious health condition at the time FMLA leave is concluded, the employee may be terminated. See also § 825.213(a)(3).

29 C.F.R. § 825.313(d). *See also* 29 C.F.R. § 825.312(e) ("An employer may delay restoration to employment until an employee submits a required fitness-for-duty certification unless the employer has failed to provide the notice required in paragraph (d) of this section. If an employer provides the notice required, an employee who does not provide a fitness-for-duty certification or request additional FMLA leave is no longer entitled to reinstatement under the FMLA.")

The facts in this case are complicated and not subject to resolution on a motion to dismiss. Plaintiff's FMLA leave concluded on October 11, 2022, but he has alleged that he requested and JVM agreed to provide him additional leave after that date. JVM insisted that he

obtain a fitness-for-duty certification and Plaintiff arranged an appointment for October 18, 2022, which JVM knew about and accepted. But that appointment was rescheduled for reasons beyond Plaintiff's control. He notified JVM of this development and the rescheduled appointment date of October 27, 2022, but JVM terminated his employment on October 25, two days before he could fulfill this requirement.

The reason given for his termination was that he had "told us that you continued to be incapacitated and unable to perform your job," a representation that JVM learned was false because he was seen to be healthy on October 22. However, this statement by JVM contradicts all of the other allegations made in the TAC, namely that Plaintiff was not incapacitated and was able to return to work and notified JVM of this fact, but JVM would not allow him to do so until he obtained the fitness-for-duty certification, which he did on October 27.

Under these circumstances, the Court concludes that Plaintiff has stated a claim for FMLA interference. If appropriate, JVM may revisit this issue with a fully developed record.

2.   Retaliation

An FMLA retaliation claim is assessed under the burden-shifting framework established for Title VII case in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Capps*, 847 F.3d at 151. Under this framework, "a plaintiff must first establish a prima facie case of discrimination. If the plaintiff succeeds, the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action. The burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination." *Id.* at 152 (citation omitted).

However, the Court of Appeals has noted a Department of Labor regulation stating that employers "cannot use the taking of FMLA leave as a negative factor in employment actions,"

17

29 C.F.R. § 825.220(c), suggests that courts should apply a lesser hurdle than that "but-for" causation standard applied in Title VII retaliation cases. *See Egan v. Delaware River Port Auth.*, 851 F.3d 263, 270-73 (3d Cir. 2017).

To state a prima facie case of FMLA retaliation, a plaintiff "must show that (1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights." *Capps*, 847 F.3d at 152 n.6. The Court of Appeals has stated that:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-21 (3d Cir.1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000).

*Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). In order to defeat a motion to dismiss, however, it is sufficient, but not necessary, to allege a prima facie case of discrimination. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021). "The complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Id.* (citation omitted). *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (establishing a prima facie case is an "evidentiary standard, not a pleading requirement.").

The parties agree that Plaintiff requested and took FMLA leave and that he suffered an adverse employment action when he was terminated. But Defendants argue that a three-month time frame is too lengthy to support temporal proximity for purposes of causation.

Defendants cite a case in which the court stated that: "Plaintiff cannot demonstrate an 'unusually suggestive' temporal proximity between her FMLA leave and her termination.

Plaintiff's FMLA leave, from Tuesday, January 12, 2016 through Wednesday, January 20, 2016, comprised a mere seven work days. She was informed of her likely nonrenewal three months later on April 28, 2016." *Kaufman v. Sussex Cnty. Educ. Servs. Comm'n*, 2018 WL 3122335, at *5 (D.N.J. June 25, 2018). However, in that case, the request for leave and the leave itself occurred at practically the same time; it does not stand for the proposition that temporal proximity is measured from the date the request for leave is made as opposed to when the leave is completed. Indeed, since the FMLA allows for up to 12 weeks of leave, Defendants' proposed reading of the statute would allow employers to terminate all employees the day after they returned from having completed their full amount of leave. No authority supports this view.

Defendants also contend that Plaintiff fails to plead any facts that establish a connection between his leave and his termination, citing the fact that he alleges he was terminated after he was observed walking on October 22, 2022. Notably, however, Plaintiff has alleged that JVM terminated his employment because when he was observed walking, and therefore JVM improperly concluded that he had requested FMLA leave under false pretenses.

Therefore, with respect to Count IV, JVM's motion to dismiss will be denied.[10]

C.  Additional Arguments by Vecchis

In addition to the arguments made by JVM, the Vecchis move to dismiss: all ADA claims asserted against them on the basis that they cannot be held liable as individuals under that statute; all PHRA claims because of Plaintiff's failure to name them in his administrative proceedings; and all FMLA claims on the ground that Plaintiff has not alleged a basis for their liability under that statute.

Plaintiff has withdrawn the so-called "participation theory" as a basis for the Vecchis'

---

[10] The Vecchis' motion, which raises the additional issue of whether Plaintiff can hold them liable under the FMLA, is discussed below.

liability under the ADA. However, he maintains that they may be held liable under the PHRA and the FMLA because these statutes provide a basis for individual liability based upon the facts alleged in the TAC.[11]

    1.  PHRA Liability

Unlike the ADA, the PHRA contains a provision that explicitly allows for individual liability based on "aiding and abetting" discrimination. 43 P.S. § 955(e). *See Dici v. Com. of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996). However, Pennsylvania law requires a plaintiff to exhaust remedies under the PHRA before filing a civil action. 43 P.S. § 962(c)(1); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997). A PHRA action ordinarily may be brought only against a party named in a charge of discrimination filed with the agency. 43 P.S. § 959(a).[12]

The PHRA requires a complainant to file a charge and "state the name and address of the person, employer, labor organization or employment agency alleged to have committed the unlawful discriminatory practice complained of." 43 P.S. § 959(a). The Vecchis contend that Plaintiff did not name either of them in his EEOC charge of discrimination, which named only JVM as the respondent. (ECF No. 44 Ex. A.)

With respect to the issue of notice, it is not disputed that the Charge of Discrimination filed by counsel for Plaintiff with the EEOC on January 25, 2023 does not name either of the Vecchis as the party against whom a charge has been brought. Likewise, the charge does not name them in the narrative. All of the allegations relate solely to JVM.

---

[11] In a footnote, the Vecchis request that the Court strike all participation theory allegations from the TAC pursuant to Rule 12(f). (ECF No. 44 at 7 n.1.) Because the Court deems Plaintiff to have abandoned this theory with respect to all claims, this issue is moot.

[12] Although the PHRA does not impose Title VII's requirement that a civil action be brought only "against the respondent named in the complaint," 42 U.S.C. § 2000e-5(f)(1), courts have interpreted the PHRA consistently with this procedural requirement of Title VII. *See Glickstein v. Neshaminy School Dist.*, 1997 WL 660636, at *10 (E.D. Pa. Oct. 22, 1997).

In *Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir. 1980), *vacated on other grounds,* 451 U.S. 935 (1981), the Third Circuit recognized an exception to dismissal of a party who was not named in the EEOC charge "when the unnamed party received notice and when there is a shared commonality of interest with the named party." *Schafer v. Board of Public Educ.*, 903 F.2d 243, 252 (3d Cir. 1990).

Plaintiff contends that he may proceed against a party not named in the administrative complaint if he meets these factors. He is correct. However, while he addresses the shared commonality issue, he fails to discuss the matter of notice. Not only does the charge of discrimination fail to name the Vecchis, it also does not identify them directly or indirectly as participants who took adverse action against Plaintiff anywhere in the narrative. While it certainly can be argued that as officers of JVM, they had, or should have had, notice of the EEOC charge, they were not put on notice that they could be sued in their individual capacities.[13]

Multiple courts have concluded that such a lack of notice requires dismissal for failure to exhaust administrative remedies. *See, e.g., Hess v. Twp. of Saint Thomas*, 2024 WL 1333371, at *5 (M.D. Pa. Mar. 28, 2024); *Coe v. Pennsylvania State Univ.*, 2016 WL 1162344, at *6 (M.D. Pa. Mar. 24, 2016); *Graudins v. Retro Fitness, LLC,* 921 F. Supp. 2d 456, 464 (E.D. Pa. 2013) (owner of company against whom a charge was brought who was not named did not have notice that he would be subject to suit in his individual capacity); *Hills v. Borough of Colwyn,* 978 F. Supp. 2d 469, 480 (E.D. Pa. 2013); *DuPont v. Slippery Rock Univ. of Pa.*, 2012 WL 94548, at *4 (W.D. Pa. Jan. 11, 2012) (President and Provost of university dismissed because they did not have notice that they could be sued in their individual capacities); *McInerney v. Moyer Lumber*

---

[13] This is particularly notable given Plaintiff's subsequent allegations in multiple versions of the Complaint that both Vecchis are personally and individually liable to him, as well as his now-withdrawn assertion of the "participation theory" against them.

*& Hardware, Inc.*, 244 F. Supp. 2d 393, 399 (E.D. Pa. 2002) (owner/chief executive officer dismissed due to lack of notice that he could be sued in his individual capacity).

Because Plaintiff has failed to show that the Vecchis had notice of the claims against them, he has not met the first prong required in *Glus* and *Schafer*. Therefore, with respect to Count III, the Vecchis' motion to dismiss will be granted.

### 2. FMLA Liability

Lastly, the Vecchis contend that Plaintiff has not met the standard to hold them liable under the FMLA.

The FMLA provides that the term "employer" includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). *See also* 29 C.F.R. § 825.104(a) ("Employers covered by FMLA also include any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer."); 29 C.F.R. § 825.104(d) ("individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of FMLA.")

The Court of Appeals has held that:

> Section 2611(4)(A)(ii)(I)'s inclusion of "any person who acts, directly or indirectly, in the interest of an employer" plainly contemplates that liability for FMLA violations may be imposed upon an individual person who would not otherwise be regarded as the plaintiff's "employer." Indeed, otherwise, § 2611(4)(A)(ii)(I) adds nothing to § 2611(4)(A)(i)'s definition of an employer as "any person . . . who employs 50 or more employees."

*Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 413 (3d Cir. 2012). Thus, unlike the ADA, the FMLA allows for the liability of individuals, including corporate officers.

The court in *Haybarger* noted that: "In analyzing an individual supervisor's control over the employee under the FLSA and the FMLA, most courts look to the 'economic reality' of the

employment situation, examining whether the individual supervisor carried out the functions of an employer with respect to the employee." 667 F.3d at 417 (footnote and citations omitted). The court approvingly cited a case from the Second Circuit that held that "some of the relevant factors in ascertaining the economic reality of the employment situation include whether the individual '(1) had the power to hire and fire the employee[ ], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* (quoting *Herman v. RSR Security Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). The *Herman* case also stated that: "No one of the four factors standing alone is dispositive. Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive. Since economic reality is determined based upon all the circumstances, any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Id.*

As Plaintiff observes, the *Haybarger* case (and the *Herman* case) addressed this issue in the context of a motion for summary judgment based on a fully developed record, not a motion to dismiss in which the allegations of the TAC must be accepted as true. Plaintiff has alleged that the Vecchis had the power to hire and fire him (and in fact they fired him in this case) and that they had control over his FMLA leave and therefore his conditions of employment. This is sufficient for purposes of a motion to dismiss. Therefore, with respect to Count IV, the Vecchis' motion to dismiss will be denied.

## V.   <u>Conclusion</u>

For the reasons explained above, the motion to dismiss filed by JVM will be granted with respect to Counts I and II and denied with respect to Counts III and IV. The motion to dismiss filed by the Vecchis will be granted with respect to Counts I, II and III, but denied with respect

to Count IV.

Appropriate orders will follow.


Dated: August 14, 2024                                    BY THE COURT:

                                                          /s/ Patricia L Dodge
                                                          PATRICIA L. DODGE
                                                          United States Magistrate Judge