IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID NATHAN CYPHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs ) | Civil Action No. 23-1428 |
| ) | |
| ) | Magistrate Judge Dodge |
| J.V. MANUFACTURING COMPANY, INC., ) | |
| MELISSA VECCHI and RYAN VECCHI, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff David Nathan Cypher brings this action under several civil rights statutes, alleging that he was subjected to disability discrimination and retaliation. He asserts that his claims arose when he was terminated from his employment with J.V. Manufacturing Company, Inc. ("JVM") when he attempted to return from work following leave taken under the Family and Medical Leave Act for knee surgery. In addition to JVM, Plaintiff has named as Defendants the company's president, Ryan Vecchi, and its vice president, Melissa Vecchi. Defendants have filed two counterclaims against Plaintiff, one for fraudulent misrepresentation and the other for negligent misrepresentation.

Pending before the Court is Plaintiff's motion to dismiss the counterclaims (ECF No. 88). For the reasons that follow, the motion will be granted.

I. **Relevant Procedural History**

Plaintiff commenced this action in August 2023, naming JVM and Melissa Vecchi as Defendants. Federal question jurisdiction is based upon the federal civil rights claims asserted in the Complaint, 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction is asserted over the state law claims, 28 U.S.C. § 1367(a).

A Second Amended Complaint filed on February 8, 2024 added Ryan Vecchi as a Defendant (ECF No. 36). Subsequently, Plaintiff was granted leave to further amend, resulting in the filing of a Third Amended Complaint ("TAC") on April 3, 2024 (ECF No. 56).

The TAC alleged claims of disability discrimination in violation of the Americans With Disabilities Act, 42 U.S.C. §§ 12101-12117 ("ADA") and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-63 ("PHRA") (Count I), failure to accommodate in violation of the ADA and the PHRA (Count II), retaliation and wrongful termination in violation of the ADA and the PHRA (Count III), and interference and retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601-54 ("FMLA") (Count IV).

On August 14, 2024, the Court granted in part and denied in part two pending motions to dismiss, one by JVM and the other by the Vecchis (ECF Nos. 73, 74, 75). As a result, the remaining claims are retaliation and wrongful termination in violation of the ADA and the PHRA against JVM only (Count III) and interference and retaliation in violation of the FMLA against all three Defendants (Count IV).

On August 28, 2024, Defendants filed an answer to the TAC (ECF No. 79) that includes two counterclaims: fraudulent misrepresentation (Count I) and negligent misrepresentation (Count II). On September 30, 2024, Plaintiff filed a motion to dismiss these counterclaims (ECF No. 88), which has been fully briefed (ECF Nos. 89, 91).

II. **Factual Background**

According to the Counterclaims, in his capacity as a supervisor for JVM, Plaintiff could fully complete his duties while working from home. On or about February 23, 2021, Plaintiff signed a telecommuting agreement authorizing him to work from home while completing his duties for JVM. (Countercl. ¶¶ 2-4.)

JVM has a short-term disability ("STD") policy (the "Policy") that pays its employees 100% of their pay for 90 days. This benefit is fully paid by the company. The policy states: "If an employee becomes disabled and cannot work for a short period of time, this coverage pays a weekly benefit of 100% of basic regular weekly earnings to a maximum benefit equivalent, as outlined below, for a two-week pay period." STD coverage under JVM's policy typically runs concurrently with FMLA leave. (*Id.* ¶¶ 5-8.)

According to the terms of the Policy: "To be eligible for STD, the employee . . . is required to avoid activities that may delay recovery and return to work." In addition, "the employee must return to work as soon as permitted by his or her health care provider, this includes light duty and working from home job descriptions when applicable." (*Id.* ¶¶ 9-10.)

On or about July 12, 2022, Plaintiff submitted paperwork to request leave under the FMLA. In his FMLA submission, Plaintiff stated that he had limited/no use of his knee and this included "no driving, no heavy lift/carry/push/pull, no prolonged standing, walking, no crouching/ kneeling/ pivoting, no climbing ladders." Plaintiff was then granted FMLA leave between July 20, 2022 and October 11, 2022. As part of the FMLA process, Plaintiff was required to furnish JVM with periodic reports on his status and intent to return to work. (*Id.* ¶¶ 11-14.)

In conjunction with his FMLA leave, Plaintiff was also granted benefits under JVM's STD policy, receiving 100% of his pay for 90 days. According to Defendants, text messages produced by Plaintiff reveal that by at least September 2022, he was engaging in activities at odds with the restrictions he identified in his FMLA paperwork. These activities included, but were not limited to, hunting, fishing, and driving. JVM alleges that Plaintiff never informed Defendants of these changes in his activity level. (*Id.* ¶¶ 15-18.)

In a September 6, 2022 email to HR Manager Kristina Poole, Plaintiff said that his recovery was not going well and that he would not be returning to work until after October 18, 2022. Plaintiff did not provide JVM with a September 2, 2022 note from his doctor that updated his restrictions until around October 24, 2022, which was after his FMLA leave and STD benefits ended. (*Id.* ¶¶ 19-21.)

Defendants allege that Plaintiff misrepresented his ability to work at least as early as September 2022, which allowed him to continue to receive STD benefits. Defendants allege that if they had received accurate information about Plaintiff's restrictions in September 2022, they could have evaluated whether he was still eligible for STD benefits as well as whether Plaintiff could return to duty by working from home or with some other accommodation. If Plaintiff had returned to work, his STD benefits would have ceased. (*Id.* ¶¶ 23-25.)

On or about October 5, 2022, Plaintiff told Ms. Poole that he would be applying for long-term disability ("LTD") benefits. Defendants assert that this was a representation that he was unable to work and would not be able to do so for the foreseeable future. (*Id.* ¶¶ 26-29.)

Plaintiff applied for and received LTD benefits through JVM's carrier, Principal, from October 18, 2022 until October 27, 2022. Under Principal's policy, a person is considered disabled if he cannot perform a majority of the substantial and material duties of his own occupation or is unable to earn a substantial portion of his pre-disability income working in his own occupation in a modified capacity or any occupation. (*Id.* ¶¶ 30-32.)

Defendants assert that based on the facts pleaded in the TAC, Plaintiff did not meet the criteria for LTD benefits because he stated that he was able to work during this period. Thus, they claim, Plaintiff obtained LTD benefits by misrepresenting his ability to work. (*Id.* ¶¶ 33-35.)

4

### III. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6),[1] a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged.

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits attached thereto, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In addition, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the

---

[1] Plaintiff's first argument is described in his brief as "standing," which is usually analyzed under Rule 12(b)(1) as an aspect of subject matter jurisdiction. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). However, the Court concludes that he is actually challenging Defendants' ability to allege elements of a misrepresentation claim under Pennsylvania law, which is decided under Rule 12(b)(6).

5

document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Plaintiff's motion to dismiss attaches JVM's Handbook sections containing its LTD and STD policies, as well as an email sent by JVM to Plaintiff in which it required him to obtain a fitness-for-duty certification to return to work.[2] Defendants do not challenge the authenticity of these documents and they may be considered here.

### IV. Discussion

Defendants have asserted fraudulent and negligent misrepresentation claims with respect to Plaintiff's receipt of long term and short-term disability payments. The elements of a fraudulent misrepresentation claim are:  "(1) a representation; (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or reckless disregard as to whether it is true or false; (4) with the intent to mislead another person into relying on it; (5) justifiable reliance; and (6) an injury proximately caused by the reliance." *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 645-46 (Pa. 2021) (quoting *Bortz v. Noon*, 729 A.2d 555, 560-61 (Pa. 1999)). Negligent misrepresentation is defined as: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the actor should have known of its falsity; (3) with an intent to induce another to act on it; (4) thereby causing injury to a party who justifiably relied upon the misrepresentation." *Id.*

#### A. Long-Term Disability Benefits

Plaintiff argues that Defendants "lack standing" to allege claims against him for misrepresentation with respect to LTD benefits because they were paid by Principal, an insurance company. Plaintiff also notes that Defendants would not be the "real party in interest" to bring this claim. Fed. R. Civ. P. 17(a). Defendants respond that they are not seeking to recover

---

[2] The information in this email was previously provided by JVM in an exhibit to its brief in support of its motion to dismiss the Second Amended Complaint (ECF No. 42 Ex. B.)

the benefits paid to Plaintiff but rather their own losses that resulted from reliance on his representations that he qualified for these benefits. Thus, the proper analysis of this issue is whether the facts asserted in this counterclaim support two elements of the misrepresentation claims related to the payment of LTD benefits to, namely that Defendants relied to their detriment on his alleged misrepresentations and that they were injured as a result.

In support of his motion, Plaintiff cites *Leverett v. Iridium Industries, Inc.*, 2024 WL 2962855 (M.D. Pa. June 12, 2024). In that case, the court dismissed an employer's counterclaim for unjust enrichment and restitution that was based on disability payments paid to the plaintiff by an insurer. The court noted that the defendant paid only the plaintiff's salary, not the disability benefits. Thus, while an unjust enrichment claim potentially could be brought by the insurance company for the disability benefits that were paid, the employer, having not made the payments, did not sustain any harm.[3]

Defendants contend that they are not seeking to recover the LTD benefits paid by Principal, but rather, their own losses. They claim that they were harmed "through the payments of benefits that otherwise would not have been paid and/or the potential insurance implications of a false claim." (ECF No. 79 ¶ 45.) The damages they seek include "disgorgement of all benefits Cypher received from his misrepresentation, including, but not limited to, any pay or benefits he received from JVM that was the result of his misrepresentations." (*Id.* at 23.)

Defendants did not pay LTD benefits to Plaintiff. Therefore, they would not be entitled to recover any sums paid by Principal to him. Further, they do not allege that they have sustained any other harm. They do not allege that Principal has made a demand for repayment of the LTD

---

[3] Defendants contend that this decision is inapplicable because they have not brought a claim for unjust enrichment. The point, however, is that the counterclaim was dismissed because the employer did not sustain any damages because it did not make the payments to the plaintiff.

7

benefits paid to Plaintiff or that they otherwise have been required to reimburse Principal for the benefits paid to Plaintiff. Further, they do not allege that they would be responsible for repayment of a "false claim" made by an employee.

Therefore, with respect to the fraudulent and negligent misrepresentation claims relating to LTD benefits, the motion to dismiss will be granted.

### B. Short-Term Disability Benefits

JVM paid STD benefits to Plaintiff while he was on FMLA leave. According to Plaintiff, the only allegation in the counterclaims about misrepresentations regarding STD benefits relates to his FMLA submission about his limitations, and this information was supplied by his physician. As a result, Plaintiff argues, Defendants have not alleged that this information was false or how they relied on it to their detriment.

Defendants counter that Plaintiff has misconstrued their claim. According to the allegations in their counterclaim, by at least September 2022, Plaintiff was engaging in activities that were contrary to the restrictions in his FMLA submission, including hunting, fishing, and driving. (ECF 79 ¶¶ 16, 17.) However, Plaintiff never informed Defendants of the changes in his activity level. (*Id.* ¶ 18.) Instead, in a September 6, 2022 to Kristina Poole, Plaintiff said that his recovery was not going well and that he would not be returning to work until after October 18, 2022. (*Id.* ¶ 19.)[4] Defendants also allege that Plaintiff did not provide Defendants with a September 2, 2022 note from his doctor that updated his restrictions until October 2022, after his leave and STD benefits had expired. (*Id.* ¶ 20, 21.)[5] Thus, Defendants allege, Plaintiff

---

[4] The Court can consider this email because it was attached by Defendants as an exhibit to a motion to dismiss (ECF No. 42 Ex. A), they expressly reference it in their counterclaims and it is in the record. In the email, Plaintiff states in relevant part that "my recovery isn't going as good as the Dr had hoped and he assigned me PT for another 6 weeks."

[5] The counterclaims do not reveal the contents of the physician's note and it is not in the record.

8

intentionally misrepresented his status to them in September 2022. (*Id.* ¶ 22.)

Defendants allege that if they had received accurate information about Plaintiff's restrictions in September, they could have evaluated whether he was still eligible for STD benefits as well as whether Plaintiff could return to duty by working from home or with some other accommodation. If Plaintiff had returned to work, his STD benefits would have ceased. (*Id.* ¶¶ 23-25.)

The counterclaims aver that Plaintiff misrepresented his ability to work at least as early as September 2022, which allowed him to continue to receive STD benefits. While Defendants allege that Plaintiff was engaging in activities that were contrary to the restrictions in his FMLA submission, they do not allege that he omitted a material fact on which they relied to their detriment. Thus, the misrepresentation claims based upon Defendants' payment of STD benefits do not appear to be grounded in fraudulent or negligent omissions. Rather, it appears that the misrepresentation at issue is the September 6, 2022 email in which Plaintiff stated that his recovery was not going as well as his doctor had hoped. Without more, this statement cannot be construed as a misrepresentation, even if Plaintiff was engaging in activities at odds with his FMLA submission, because on its face, it is a statement about what his doctor believed. The fact that he withheld the doctor's note, even assuming the truth of this allegation, does not support a claim that he misrepresented the status of his recovery in the absence of any allegations about what the note said. And as Defendants allege, they were provided with the note in October 2022.

Therefore, with respect to the fraudulent and negligent misrepresentation claims relating to STD benefits, the motion to dismiss will be granted.

### V. Conclusion

As discussed, the counterclaims are deficient because they fail to allege sufficient facts to

state a claim. While the Court will grant the motion to dismiss, it cannot conclude as a matter of law that amendment of the counterclaims would be futile. *Alvin v. Suzuki,* 227 F.3d 107, 121 (3d Cir. 2000) ("an amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted.") Therefore, Plaintiff's motion will be granted without prejudice.

Defendants may, if they choose to do so, file a motion for leave to amend. Any such motion must attach as an exhibit the proposed amendment.

An appropriate order will follow.

February 11, 2025             BY THE COURT:

                                                 s/Patricia L. Dodge
                                                 PATRICIA L. DODGE
                                                 United States Magistrate Judge